*671 GREGORY, Circuit Judge,
concurring in part and dissenting in part:
I concur with the reasoning of the majority’s opinion on Powell’s ineffective assistance of counsel claims. However, I find nothing reasonable about the Supreme Court of Virginia’s finding in Powell II that the bill of particulars nullified the Commonwealth’s conduct at Powell’s first trial. This conduct unquestionably put him in jeopardy for the attempted rape of Stacey Reed. Even taking into account the nearly insurmountable burden placed on Powell by virtue of the Antiterrorism and Effective Death Penalty Act of 1996 (“AEDPA”), I am left with the firm conclusion that the Supreme Court of Virginia’s post-hoc rationalization in Powell II is an unreasonable determination of the facts in light of the evidence presented, and thus Powell’s conviction for capital murder must be reversed.
The Fifth Amendment to the United States Constitution provides that no “person be subject for the same offense to be twice put in jeopardy of life or limb.” There can be no doubt that Powell was actually put in jeopardy for the gradation offense of the attempted rape of Stacey during the first trial, and thus his second capital murder trial violated the Double Jeopardy Clause. Although the bill of particulars purportedly identified Kristie Reed as the victim of the gradation offense, the Commonwealth nevertheless argued throughout the first trial that Powell attempted to rape Stacey prior to her murder. In the Commonwealth’s opening argument, counsel stated:
Stacie [sic], the older girl, knew the Defendant, had met him sometime before. They had a friendship, a social acquaintance. You’ll hear evidence that he wanted more from her than that. You’ll hear evidence that she was cool towards him.
... And on the afternoon of the 29th, there was nobody home with Stacie [sic] when he came over and they argued about this boy that she was dating. And he wanted something from her and she wasn’t going to give it to him and for that she lost her life.
(J.A. 24-25 (emphasis added).) During the trial, the Commonwealth put on circumstantial evidence suggesting that Powell had attempted to rape Stacey, and even argued as much to the trial court. In response to Powell’s motion to strike the indictment for insufficiency of the evidence, counsel argued that
[W]e have evidence here, again, from Mr. Neff that according to him [Powell] was having sex or attempting to have sex with Stacie [sic] when the phone rang. When she got up and answered the phone, then she wanted nothing to do with him, and at that point in time he got mad and said — the testimony was, he said, “It was that nigger, wasn’t it?” He pulled out his knife and stabbed her.

Again, evidence, in that regard of his intent to rape and have sex and wanting sex.

(J.A. 43 (emphasis added).) Furthermore, the Commonwealth elicited testimony from Officer Daigneau, who testified that a physical evidence recovery kit had been obtained from Stacey and such kits are “routinely done in cases of sexual assault.” (J.A. 29; see also J.A. 29-31.)
Tellingly, at no time during the trial did the Commonwealth ever specifically identify Kristie as the victim of the gradation offense.[1] Nor did the trial court make any *672 attempt to clarify that the bill of particulars identified Kristie as the victim of the gradation offense. In its instructions to the jury, the trial court stated that
[t]he Commonwealth must prove beyond a reasonable doubt each of the following elements of that crime:
1. That the defendant killed Stacie [sic] Reed; and
2. That the killing was willful, deliberate and premeditated; and
3. That the killing occurred during the commission of robbery and/or attempted robbery and/or during the commission of, or subsequent to rape.
(J.A. 59 (emphasis added).) With regard to first-degree murder, the trial court gave similarly broad instructions:
If you find from the evidence that the Commonwealth has failed to prove that the killing was deliberate and premeditated, but the killing was willfully committed during the commission of robbery or attempted robbery and/or rape or attempted rape, you shall find the defendant guilty of first degree murder.
(J.A. 60 (emphasis added).) Given the lack of specificity in the jury instructions, it is not surprising that during deliberations the jury asked: “Can a guilty verdict for the rape of Kristie be used to satisfy jury instruction number 4, element 3?”[2]
(J.A. 62.) The fact that the jury needed to ask this question demonstrates that the jury was unaware that the bill of particulars identified Kristie as the sole victim of the gradation offense, and it further implies that the jury was considering the rape or attempted rape of both Stacey and Kristie in reaching its verdict.
On appeal, the Supreme Court of Virginia itself recognized that Powell had been put in jeopardy for the rape or attempted rape of Stacey, and indeed based its decision in part on that finding. See Powell I, 552 S.E.2d at 363. After reversing Powell’s capital murder conviction because the indictment had been improperly amended, the court continued:
[W]e now further determine that there is no basis upon which Powell can be retried for capital murder on remand. The poll of the jury establishes that Powell was acquitted of the charge of capital murder in the commission of robbery or attempted robbery. It is equally dear that there is simply no evidence upon which the jury could have relied to find that Powell committed or attempted to commit any sexual assault against Stacey before or during her murder, or that the rape of Kristie did not occur after the murder of her sister....
For these reasons, we will reverse Powell’s conviction for capital murder, affirm his convictions for abduction, rape, attempted capital murder, and grand larceny, and remand the case for a new trial on a charge of no greater than first degree murder for the killing of Stacey Reed, if the Commonwealth be so advised.
Id. (emphasis added). It is perplexing that the Supreme Court of Virginia would have made such a finding if, in fact, the *673 rape or attempted rape of Stacey had not been litigated in the first trial.
In affirming Powell’s capital murder conviction in Powell II, however, the Supreme Court of Virginia reversed course. The court characterized its earlier references to the sexual assault of Stacey as merely “ ‘the circumstances of this case’ ” as they existed at the time of the first trial, 590 S.E.2d at 552 (quoting Powell I, 552 S.E.2d at 363). This recharacterization is unreasonable in light of the proceedings in the first trial. At every turn, the Commonwealth, the trial court, the jury, and even the Supreme Court of Virginia acted as though Powell were on trial for the murder of Stacey in the commission of any rape or attempted rape, and not specifically on trial for the murder of Stacey in the commission of the rape of Kristie.
Like the Supreme Court of Virginia, the majority claims that “no one involved litigated as though Powell was being tried for murder during the rape or attempted rape of Stacey.” (Maj. Op. 667 n. 6.) Yet, the majority provides no explanation for why the Commonwealth elicited testimony that police officers performed a physical evidence recovery kit on Stacey or made intimations that Powell attempted to sexually assault Stacey. (See J.A. 29, 24-25.) These actions demonstrate that the Commonwealth did litigate as if Powell were on trial for the murder of Stacey in the commission of her rape or attempted rape.
In further support of its finding that Powell had not already been put in jeopardy for the rape or attempted rape of Stacey, the Supreme Court of Virginia found that the bill of particulars served to narrow the offense of jeopardy to include only the rape of Kristie:
[Wjhere, prior to the attachment of jeopardy, the Commonwealth limits the prosecution of a capital murder, undifferentiated in the indictment by the identity of the victim of the gradation offense, by naming a specific victim of the gradation offense in a bill of particulars, jeopardy will attach only to the capital murder charge as made specific by the bill of particulars.
Powell II, 590 S.E.2d at 554. The majority now relies on this holding in finding that the Supreme Court of Virginia committed no reversible error in its application of federal law. {See Maj. Op. 665-67.)
Even assuming that this holding is not unreasonable as a matter of law, it overlooks the fact that the Commonwealth did not actually limit its prosecution for capital murder to the rape of Kristie. Moreover, neither the prosecution nor the trial court ever specified to the jury that the bill of particulars identified Kristie as the victim of the gradation offense. Had the trial court excluded evidence suggesting that Powell had attempted to rape Stacey or clarified that the attempted rape of Stacey could not satisfy the requirements of the gradation offense, the Commonwealth would have a stronger argument that the bill of particulars had a limiting effect— but that is not the case here. Instead, the bill of particulars operated as a double-edged sword for Powell: on one hand, the Commonwealth ignored its import in putting on circumstantial evidence suggesting that Powell had sexually assaulted Stacey before her murder, while on the other hand the Commonwealth was able to use the bill of particulars as a safety valve to later retry Powell for capital murder when new evidence came to light.
Notwithstanding the above analysis, the majority concludes that the rape or attempted rape of Stacey was somehow not litigated because Powell’s trial counsel “clearly recognized” the limiting effect of the bill of particulars, “as evidenced by their comments to the court and to the jury.” (Maj. Op. 667 n. 6.) Again, the *674 majority misses the point. I agree that Powell’s trial counsel understood that the bill of particulars should limit the prosecution of the gradation offense. Indeed, Powell’s trial counsel submitted proposed jury instructions specifying that Kristie was the victim of the gradation offense. (R. vol. 21 at 1213.) The problem is that despite counsel’s exhortations, the trial court did not use the proposed jury instructions or otherwise clarify this point to the jury.
Finally, the majority contends that the trial judge impliedly recognized the effect of the bill of particulars when he instructed the jury that “[s]exual intercourse means an actual penetration, no matter how slight, of the Defendant’s penis into the sexual organ of Kristi[e] Reed.” (R. vol. 20 at 1024-25.) But the majority takes this instruction out of context. Along with capital murder, Powell was charged with the rape of Kristie. It was in instructing the jury on this latter charge that the trial judge used the phrase “sexual intercourse.”[3] (R. vol. 20 at 1020.) Thus, when the trial judge clarified the definition of sexual intercourse, it was for the purposes of the rape charge, which specified Kristie as the victim, and not the capital murder charge, which did not specify Kristie as the victim.
Undoubtedly, the crimes committed by Paul Powell were atrocious. Given the explicit details revealed by Powell in his letter to the Commonwealth’s attorney, one understands the strong inclination to prosecute Powell for those heinous acts. Yet, it is in these very cases that we must be most vigilant in protecting our longstanding constitutional guarantees. The Double Jeopardy Clause makes no distinction between the innocent and the guilty, nor any exception based on the severity of the offense or the personal attributes of the accused. In finding that the attempted rape of Stacey had not been litigated in the first trial, the Supreme Court of Virginia made an unreasonable determination of the facts in light of the conduct of all parties involved in that trial. This determination had the unconstitutional effect of permitting the Commonwealth to try Powell a second time in violation of his Fifth Amendment rights. Given this outcome, Powell’s second capital murder conviction should not stand, and I must dissent.

. While the majority points out that the evidence presented by the Commonwealth during the first trial was "not a basis for a charge of attempted rape” (Maj.Op. 667), that analy *672 sis conflates the issue of whether an individual was put in jeopardy for an offense with the issue of whether the prosecution put on sufficient evidence to convict an individual for that offense. The Commonwealth did not fail to prosecute Powell for the attempted rape of Stacey, it just failed to do so successfully, and the majority misses that point in its analysis.

. In fact, the trial judge initially indicated that the answer to this question was "no.” (J.A. 53.) Such an answer would only make sense if the judge thought that the attempted rape of Stacey would satisfy the requirement of the gradation offense and that the jury could convict Powell of that offense.

. The trial judge gave the following instructions on the rape charge: "The Commonwealth must prove beyond a reasonable doubt each of the following elements of th[e] crime [of rape]: One, that the Defendant had sexual intercourse with Kristife] Reed; and two, that it was against her will and without her consent; and three, that it was by force, threat, or intimidation.” (R. vol. 20 at 1020.) By contrast, the trial judge gave the following instructions on the capital murder charge: "The Commonwealth must prove beyond a reasonable doubt each of the following elements of th[e] crime [of capital murder]: ... 3. That the killing occurred during the commission of robbery and/or attempted robbery and/or during the commission of, or subsequent to rape.” (J.A. 59.)